UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X

THOMAS ZANE,

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

**COMPLAINT
WITH JURY DEMAND**

Plaintiff ★ OCT 1 2 2011 ★

BROOKLYN OFFICE

CV11 - 4961

-against-

CITY OF NEW YORK, DAVID M. FRANKEL,
OLIVER PU-FOLKES, TIMOTHY LaROSE,
individually and in their official
capacities,

**BLOCK, J.
REYES, M.J**

Defendants.

------------------------------------X

Plaintiff, THOMAS ZANE ("ZANE"), by and through his attorneys, the Law Firm of CRONIN & BYCZEK, LLP, as and for his Complaint against Defendants, respectfully set forth the following:

### NATURE OF ACTION

1. This action is hereby commenced for the purpose of seeking to secure protection of, and to redress the deprivation of, rights secured by the United States Constitution, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981, 42 U.S.C. §1983, First Amendment, Fourteenth Amendment, New York State Executive Law §296, and New York City Human Rights Law §8-107 et. seq., providing for relief based upon Defendants' unlawful employment practices of engaging in discrimination based upon Plaintiff's exercising his First Amendment right freedom of speech and retaliation against Plaintiff for engaging

in the protected activity of formally complaining of matters of public concern and discrimination.

## JURISDICTION

2. The jurisdiction of this Court is invoked based upon federal questions and pursuant to the Constitution of the United States, the New York State Constitution, 28 U.S.C. §§1343(3) and (4), 28 U.S.C. §1331, as well as 42 U.S.C. §2000e through §2000e (15).

3. This Court has supplemental jurisdiction over the federal claims pursuant to 28 U.S.C. §1367.

4. Jurisdiction is also invoked under the doctrine of pendant jurisdiction with respect to any and all state claims set forth in all counts.

5. The rights, privileges and immunities sought herein to be redressed are those secured by the First Amendment freedom of speech and by the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution, and provisions against discrimination and retaliation in employment based upon Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981, 42 U.S.C. §1983, along with applicable provisions of the New York State Constitution, New York State Executive Law and New York City Human Rights Law.

## SATISFACTION OF PREREQUISITES UNDER TITLE VII

6. On or about December 21, 2009, Plaintiff, THOMAS ZANE, in accordance with applicable law, filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which organization receives and investigates charges of discrimination and retaliation as set forth by the Federal Anti-Discrimination Laws, including Title VII of the Civil Rights Act, as amended.

7. Said Charge of Discrimination charged that Defendants engaged in unlawful employment discrimination practices based upon retaliation for engaging in protected activity.

8. On July 11, 2011, the US Department of Justice, Civil Rights Division issued a "Notice of Right to Sue" letter advising Plaintiff of the completion of his prerequisites to file suit in federal court. Plaintiff received said "Notice of Right to Sue" letter on July 14, 2011. A copy of the "Notice of Right to Sue" letter issued to Plaintiff is annexed hereto as **Exhibit "A"**.

### VENUE

9. Venue is proper within the Eastern District of this Court, City of New York, State of New York, as the course of Defendants' conduct took place within the boundaries of the County of Queens, State of New York, and the instant causes of action are based upon violations of the New York State

3

Constitution, New York State Executive Law and New York City Human Rights Law.

## PARTIES

10. Plaintiff THOMAS ZANE is a white male citizen of the United States and a resident of New York County, State of New York. He has registered his opposition to the discriminatory practices of Defendants and safety concerns of members of the Sheriff's Department and the Public at large thus is a member of a protected class. At all times relevant to this action, Plaintiff was, and still is, a uniformed member of the CITY Sheriff's Office since 1987. He currently holds the position of Lieutenant.

11. Defendant CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the CITY and State of New York. CITY is authorized by law to maintain a Department of Finance that acts as its agent and for which it is ultimately responsible. The New York City Sheriff's Office is a division of the Department of Finance, and is the chief civil law enforcement office for the CITY.

12. Defendant DAVID M. FRANKEL ("FRANKEL") has been Commissioner of the CITY Department of Finance since 2009 and was, and still is, acting in such capacity at all times relevant herein. FRANKEL was, and still is, Plaintiff's supervisor. FRANKEL is sued in his official capacity.

4

13. Defendant TIMOTHY LaROSE ("LaROSE") was at all times relevant the Chief of Operations for the CITY Sheriff's Office. At all times relevant to this Complaint, LaROSE was and still is Plaintiff's superior officer and supervisor. He is sued in his individual and official capacity.

14. Defendant OLIVER PU-FOLKES ("PU-FOLKES") was at all times relevant the First Deputy Sheriff for the CITY Sheriff's Office. At all times relevant to this Complaint, PU-FOLKES was and still is Plaintiff's superior officer and supervisor. He is sued in his individual and official capacity.

## FACTS UNDERLYING PLAINTIFF'S CLAIMS

15. Plaintiff is currently employed as a Lieutenant in the CITY Sheriff's Office, a division of the Department of Finance, where he has worked since August 1987.

16. Throughout his employment with the Office of the Sheriff, Plaintiff has always had an exemplary performance record maintaining evaluations of "superior/outstanding". Plaintiff has never had any civilian complaints against him. Plaintiff has never until now had any disciplinary charges.

17. Plaintiff has been treated differently than similarly situated members of the Office of the Sheriff who are active in the Union and vocal in their opposition to the Sheriff's discriminatory practices in the terms and conditions of his and other members' employment along with speaking out regarding

5

matters of public concern, assisting Deputy Sheriffs with grievances as the Director of the Grievance Committee for the Union and offering testimony in Supreme Court New York County regarding the demotions and layoffs of twelve Deputy Sheriffs. Plaintiff also complained about Occupational Safety & Health Administration ("OSHA") regarding the conditions of his and other employees' employment, specifically regarding their safety.

18.   Plaintiff has suffered adverse employment actions, specifically Plaintiff has been subjected to unfair discipline; Plaintiff has not been awarded discretionary pay, as promised, for the additional work Plaintiff was required to do that a Sheriff does, Plaintiff is routinely and without justification, denied opportunity for overtime pay.

19.   During his employment with the New York City Sheriff's Department, Plaintiff helped create a unit known as "Kendra's Law Unit" in which he is currently assigned located in Long Island City, Queens County, New York. "Kendra's Law Unit" is in charge of picking up Emotionally Disturbed Persons ("EDP") for Court ordered/mandatory participation in a mental health program. Plaintiff also created the training, procedures and policies of "Kendra's Law Unit" for which he continues to manage to this day.

6

20. Plaintiff has been subjected to retaliatory conduct such as requiring that he wear a uniform at all times while other supervisors are permitted to be out of uniform while on duty. Furthermore, Plaintiff along with his entire unit have been subjected to unsafe conditions including but not limited to Defendants' failure to issue proper equipment.

21. On or about February 24, 2009, Defendant PU-FOLKES began requesting that Plaintiff help him during Plaintiff's tour to gather statistical information and other facts and circumstances about Plaintiff's work and experience for the sole purpose of assisting Defendant PU-FOLKES with his educational efforts to obtain his Doctorate degree.

22. When Plaintiff advised Defendant PU-FOLKES that it was becoming difficult for Plaintiff to complete his assigned work from the Sheriff's Department, while also personally helping Defendant PU-FOLKES with his personal "homework", Defendant PU-FOLKES became hostile and threatening towards Plaintiff.

23. On or about August/September 2009, Defendant PU-FOKLES, despite knowing that Plaintiff was in charge of "Kendra's Law Unit" and established the policy and procedures on how the unit operates and handles the "EDPs", began to question Plaintiff's work despite having no complaints from anyone and having utilized Plaintiff's expertise in regards to the handling of "EDPs" while writing his Doctoral thesis on the subject.

This was done solely to harass Plaintiff in front of the Deputy Sheriffs in his unit.

24. Plaintiff has complained of not having proper equipment issued to the "Kendra Unit" officers while performing operations to apprehend "EDPs", placing officers in extreme danger and a disadvantage. Said complaints have been documented at public hearings, verbally and in writing.

25. Shortly after, Plaintiff began speaking about the dangerous situations that the Deputy Sheriffs were being placed in by the Defendants and of the dangers to the public at large, including the "EDPs", Plaintiff's employment with the New York City Sheriffs Department began to become unbearable due to harassment and retaliation.

26. On April 23, 2009, Plaintiff requested Deputy Sheriff Level II designation for all deputies in "Kendra's Law Unit". Plaintiff informed Defendants that the "Kendra Unit" performs the most dangerous work in the Sheriffs Department and achieves outstanding results. Said request was denied.

27. Plaintiff has also asked in the past for his deputies to receive exceptional merit medals and commendations, yet despite other units receive acclamations, Plaintiff's unit is ignored. These awards are essential for Plaintiff's career advancement and have been intentionally overlooked in retaliation for Plaintiff being outspoken in regards to

8

discrimination and employee and civilian safety, along with his Union activities.

28. As a result of Plaintiff's whistle blowing regarding safety issues and discriminatory conducts on part of the Defendants, he has consistently been denied opportunities for overtime. Other similarly situated Lieutenants and subordinates are routinely granted overtime compensation. Plaintiff has been denied overtime because of his Union activity and in retaliation for his opposition to discriminatory practices of the Sheriff and other supervisors. Plaintiff continues to be denied overtime.

29. On September 4, 2009, during a "Kendra's Law Unit" staff meeting, Plaintiff came extremely vocal in defense of a black female, Lieutenant Sylvia Bowen-Hooks, because of her being unfairly and unjustly treated by Defendants. Plaintiff voiced his concern that he believed Lieutenant Bowen-Hooks was being discriminated because she was a female and black. Plaintiff also complained during the meeting that the unit was understaffed and required more deputies for safety related issues.

30. Following the September 4, 2009 meeting, and over a two month period of time thereafter, "notes" of the meeting began to be circulated to numerous individuals which seriously misrepresented Plaintiff's participation in the meeting.

31. Sometime in September 2009, Plaintiff complained to Defendant FRANKEL that Defendant PU-FOLKES was captured in a photo and on videotape at the United Nations in full uniform wearing his Sheriff's uniform with "4 stars" along with his New York City Police Department patch on his sleeve. This implied that Defendant PU-FOLKES was a "4 star" Chief with the NYPD when in actuality he was on loan from the NYPD and holds only the rank of Sergeant with the NYPD.

32. On or about September 2009, in retaliation for having opposed the discriminatory conduct against Lieutenant Bowen-Hooks, Plaintiff's unit was ordered to wear full uniform while in the office.

33. Plaintiff subsequently complained to Defendants regarding the new rules concerning wearing the uniform for the "Kendra's Law Unit" as retaliation for his prior complaints to Defendants regarding discrimination and safety issues for the Deputy Sheriffs and civilians including "EDPs".

34. As a result of Plaintiff's complaint regarding the wearing of the full uniform, Defendants revised their directive and ordered that the entire Sheriffs Department was to wear a full uniform while on duty. As a result, Plaintiff has been blamed and ridiculed by co-workers from different units for the punitive change in policy.

35. On September 24, 2009, Plaintiff was appointed by the Union President as Director of the Grievance Committee for the Union. As part of his duties as Director, Plaintiff spoke out against discrimination and unfair treatment by Defendants against his co-workers, including Lieutenant Bowen-Hooks.

36. On October 1, 2009, in retaliation for defending Lieutenant Bowen-Hooks (female black) and for filing complaints of OSHA violations, Plaintiff was issued a disciplinary counseling memo.

37. On or about October 7, 2009, after receiving the retaliatory counseling memo Plaintiff contacted the EEO for the Department of Finance in order to complain and fill out the proper documents, however, Plaintiff was convinced not to do it because he was informed by EEO that his name would be placed on the documents and forwarded to Defendant PU-FOLKES who authorized the counseling memo. Such action by the EEO was a violation of the confidentiality of Plaintiff and violation of the EEO mandate.

38. On October 27, 2009, for the first time in Plaintiff's career he was threatened with formal discipline and received a counseling memo after threatening to complain to the OEEO of the Sheriff's Department. Said discipline was in retaliation for having filed complaints against Defendant PU-FOLKES, the lack of proper equipment during the unit's operations with "EDPs" and

his Union activity as Director of Grievances. Said discipline was signed off by Defendants FRANKEL, PU-FOLKES, and LaROSE.

39. On November 6, 2009, the notes from the "Kendra Law Unit" meeting by Peter Sammarco regarding the meetings that were held on September 4, 2009 and October 7, 2009. Numerous inaccuracies were contained in said notes and Plaintiff informed his supervisor of same. When Plaintiff complained, no corrective action was taken by the Defendants, who were present and certain comments related to Plaintiff were falsified.

40. Towards the end of December 2009, Plaintiff began to be micromanaged by the Defendants because of his whistle blowing in regards to personnel and civilian safety along with his Union activities in regards to grievances filed on behalf of the membership.

41. On or about May 28, 2010, Plaintiff testified at a grievance hearing regards to overtime issues. As a result, the Sheriffs Department changed its policy to disallow overtime if prior approval was not received by Defendant LaROSE, Chief John McBride or Director Peter Sammarco and only granted if it is absolutely necessary to complete work, which must be completed that day.

42. On or about June 9, 2010 Plaintiff was interviewed by EEO regarding a co-worker, Lieutenant Sylvia Bowen-Hooks in a discrimination complaint she filed against Defendant PU-FOLKES.

12

As a result, Plaintiff began to be retaliated against by Defendants PU-FOLKES, LaROSE and other Defendants.

43.   On July 20, 2010, Plaintiff received and "outstanding" evaluation by his immediate supervisor, Thomas Doyle for the time period July 1, 2009 to June 30, 2010.

44.   On July 30, 2010, Undersheriff Doyle was counseled by Defendant LaROSE that he failed to obtain a proper review of the evaluation by Director Peter Sammarco before the evaluation of the Plaintiff was issued.

45.   On September 1, 2010, Undersheriff Thomas Doyle issued a memorandum to Defendant LaROSE objecting to LaROSE's inference that Plaintiff did not perform his evaluations "objectively and accurately" with "integrity". Undersheriff Doyle accused Defendant LaROSE of demeaning the Plaintiff and LaROSE's complaints against the Plaintiff "have no basis in fact".

46.   On September 13, 2010, Plaintiff was issued a conference memo by Defendant LaROSE regarding the disapproval of the evaluations Plaintiff had issued to "Kendra's Law Unit" personnel despite Defendant LaROSE not being their direct supervisor and having knowledge of the personnel work performance.

47.   On or about January 2011, Plaintiff testified before Supreme Court Justice Emily Jane Goodman in the matter of <u>Davis v The City of New York</u>, Index No. 100722/11 in Supreme Court New

York County against the City of New York and the Sheriffs Department regarding the negative effects of the loss and/or demotion of a total of twelve individuals who have been long term sheriffs (three were supervising Deputy Sheriffs and nine were Deputy Sheriffs) and the ramifications of the safety of the members of the Sheriff's Department and the public. Plaintiff testified that the public would be at risk if the jobs were eliminated and/or the Petitioners were laid off. Said testimony was a matter of public concern.

48. As a result of the aforementioned acts by the Defendants, Plaintiff has suffered tremendous personal anxiety, health concerns, personal and professional embarrassment, damage to his reputation. He has suffered economically, physically, emotionally and mentally.

## AS AND FOR A FIRST CLAIM PURSUANT TO 42 U.S.C. §1981 AGAINST ALL INDIVIDUAL DEFENDANTS

49. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-48 with the same force and effect as if fully set forth herein.

50. Throughout the events cited herein, the Defendants, while acting under color of law, subjected the Plaintiff to retaliatory and disparate treatment because of his efforts to vindicate the rights of minority Correction Officers to be free of racially motivated employment discrimination pursuant to

their Collective Bargaining Agreement, the United States Constitution and New York State Constitution.

51. Plaintiff has been deprived of his constitutional rights to be free of retaliation and harassment for his whistle blowing complaints and protests decrying the obvious disparaging and racially motivated comments made by the Defendants along with the Defendants failure to properly supervise, discipline and/or reprimand the aforementioned individual Defendants.

52. As a result of the retaliatory and harassing conduct Plaintiff ahs been forced to endure and continues to suffer to the present time.

53. As a result of Defendants' actions, Plaintiff has been damaged in his employment and has suffered economically, humiliated, emotional distress and conscious pain and suffering.

54. The actions of the Defendants as hereinbefore stated were willful and malicious.

55. As a result of the aforesaid wrongful, reckless and intentional acts of the Defendants, Plaintiff has been damaged in the amount of Two Million ($2,000,000.00) Dollars.

56. Based on the foregoing, Plaintiff is entitled to Punitive and Exemplary damages in the sum of Two Million ($2,000,000.00) Dollars.

## AS AND FOR A SECOND CLAIM PURSUANT TO 42 U.S.C. §1983
## AGAINST ALL INDIVIDUAL DEFENDANTS

57. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-56 with the same force and effect as is fully set forth herein.

58. The individual Defendants have embarked on a course of conduct that deprived Plaintiff of his rights under the United States Constitution, federal and state law.

59. The facts and circumstances cited above with reference to the Constitution and other civil rights violations suffered by Plaintiff are examples of Defendants' violations of Plaintiff's civil rights.

60. The actions of Defendants, acting under color of state and local law, custom and usage, have deprived Plaintiff of his rights, privileges and immunities under the laws and Constitution of the United States, and in particular, of his rights to equal protection under the 14th Amendment.

61. Defendants, through their policies, practices, acts and omissions are deliberately indifferent to the hostile work environment and harassment of Plaintiff and other Union activists created by the Defendants and other Sheriffs under their supervision and Defendants, thus, subjected the Plaintiff and other Union activists to harassment, abuse and a hostile work environment because of their Union activities and outspokenness in

16

violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

62. By these actions, Defendants have jointly and separately deprived Plaintiff of his rights under the 14th Amendment to the United States Constitution, in violation of 42 U.S.C. §1983.

63. As a consequence of Defendants' unlawful actions, Plaintiff demand damages in the amount of $2,000,000.00.

## AS AND FOR A THIRD CLAIM PURSUANT TO 42 U.S.C. §1983 FOR FIRST AND FOURTEENTH AMENDMENTS RETALIATION

64. The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-63 with the same force and effect as if fully set forth herein.

65. Plaintiff has been unlawfully subjected to a hostile working environment and harassment in retaliation for exercising his First and Fourteenth Amendment rights to protected speech. The aforementioned conduct on the part of the defendants was without cause or justification and violated Plaintiff's rights, privileges and immunities as guaranteed by the First and Fourteenth Amendment of the United States Constitution as well as the Constitution of the State of New York and the New York State Division of Human Rights Law.

66. Defendants' actions have caused a chilling effect on Plaintiff's ability to speak freely regarding Union issues and properly representing Union members.

67. The actions of the Defendants in depriving Plaintiff of his constitutional and civil rights were willful and malicious acts.

68. As a direct and proximate consequence of Defendants' unlawful, discriminatory and harassing conduct, Plaintiff has suffered loss of benefits and privileges of his employment with the Sheriffs Office, damaged professionally and economically, suffered humiliation as well as physical and emotional pain and suffering.

69. Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of Two Million ($2,000,000.00) Dollars and Punitive and Exemplary damages in the amount of Two Million ($2,000,000.00) Dollars.

## AS AND FOR A FOURTH CLAIM AGAINST DEFENDANTS FOR FIRST AMENDMENT RETALIATION

70. Plaintiff repeats, realleges, and reiterates each and every allegation set forth in paragraphs 1-69 with the same force and effect as is fully set forth herein.

71. Plaintiff has been unlawfully subjected to a hostile work environment and harassment in retaliation for exercising his First Amendment rights to free speech.

18

72. The aforementioned conduct on the part of Defendants was without cause or justification and violated Plaintiff's rights, civil rights, privileges and immunities as guaranteed by the First Amendment of the United States Constitution as well as the Constitution of the State of New York and the New York City Administrative Code and Human Rights Law.

73. The actions of Defendants in depriving Plaintiff of his constitutional and civil rights were willful and malicious acts.

74. As a direct and proximate consequence of Defendants' unlawful, discriminatory and harassing conduct, Plaintiff has suffered losses of benefits and privileges of his employment with the Sheriff's Office, been damaged professionally and economically, as well as suffered physical and emotional pain and suffering.

75. Based on the foregoing, Plaintiff is entitled to compensatory damages in the amount of $2,000,000.00, and punitive and exemplary damages in the amount of $2,000,000.00.

## AS AND FOR A FIFTH CLAIM IN VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964 AS AMENDED

76. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-75 with the same force and effect as is fully set forth herein.

19

77. Based upon the aforementioned facts, Defendants discriminated against Plaintiff as a result of his whistle blowing, regarding matters of public concern by retaliating against him for exercising his First Amendment rights to complain of discrimination without retaliation and OSHA violations.

78. Defendants intentionally and willfully discriminated against and harassed Plaintiff and permitted Plaintiff to be discriminated and retaliated against and harassed in his employment in retaliation for opposition to discrimination and complaints and testimonies on matter of public concern, thereby violating §704(A) OF Title VII of the Civil Rights Act of 1964 as amended and 42 USC §2000e-3(a).

79. No action was taken by Defendants or its agents to stop the harassment of Plaintiff, thereby contributing to a hostile working environment.

80. As a result of the Defendants' conduct, Plaintiff has suffered economic loss, pain, humiliation, embarrassment, and extreme emotional distress and continues to suffer to this day, and further as a result of Defendants' conduct, Plaintiff has suffered both professionally and personally.

81. As a result of the foregoing, Plaintiff has been damaged in the amount of $2,000,000.00. Additionally, Plaintiff

seeks punitive and exemplary damages in the sum of $2,000,000.00 against the individual Defendants.

## AS AND FOR A SIXTH CLAIM PURSUANT TO
## NEW YORK STATE EXECUTIVE LAW §296

82. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-81 with the same force and effect as if fully set forth herein.

83. Based on the foregoing, Defendants intentionally and willfully discriminated against Plaintiff in his employment and retaliated against him for his opposition to discriminatory practices and complaints of matters of public concern in violation of New York State Executive Law §296. Plaintiff has continuously been victimized by Defendants for his opposition to discrimination and whistle blowing regarding safety issues causing a hostile working environment to be created by Defendants.

84. Even though Defendants were aware of Plaintiff's complaints and the existence of a hostile work environment, no actions were taken by Defendants in an effort to correct the discriminatory conduct on part of the Defendants.

85. Such conduct on the part of Defendants and all others, without cause or justification, violated the Plaintiff's civil rights guaranteed under the New York State Constitution and New York State Executive Law § 296.

86. As a result of Defendants' actions and all deprivations of Plaintiff's rights as guaranteed under New York State Executive Law § 296, Plaintiff has suffered economic loss, pain, humiliation and extreme emotional distress.

87. As a result of the foregoing wrongful, careless and intentional acts of Defendants, Plaintiff has been damaged in the amount of $2,000,000.00. Additionally Plaintiff seeks punitive and exemplary damages in the amount of $2,000,000.00.

## AS AND FOR A SEVENTH CLAIM PURSUANT TO NEW YORK CITY ADMINISTRATIVE CODE SECTION 8-107(1) et. seq.

88. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-87 with the same force and effect as is fully set forth herein.

89. Defendants discriminatory conduct based on Plaintiff's whistle blowing and complaints regarding matters of public concern as well as in retaliation for speaking out against discriminatory conduct by the Defendants against a black female co-worker and in retaliation for his opposition to discrimination, constitutes discrimination in violation of the New York City Administrative Code § 8-107(1) et.seq. and the New York City Human Rights Law.

90. The aforementioned occurrences were caused by the wrongful, careless, reckless and intentional acts of Defendants.

91.   Because of the foregoing, Plaintiff has been damaged in the amount of $2,000,000.00.   Additionally Plaintiff seeks punitive and exemplary damages in the amount of $2,000,000.00.

## JURY TRIAL

92.   Plaintiff requests a jury trial on all questions of fact.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this honorable Court grant the following relief:

1.   Declare that the aforementioned actions of Defendants were unconstitutional and in violation of the United States Constitution, the New York State Constitution and New York City Human Rights Law and Administrative Code along with all applicable statutes;

2.   Declare that the aforementioned discriminatory actions of Defendants were in violation of New York State Executive Law § 296, 42 U.S.C. § 1983,  and Title VII of the Civil Rights Act of 1964, as amended;

3.   Enjoin the Defendants and their successors, agents, servants, employees and those in active concert or participation with them from subjecting their employees to retaliatory and harassing conduct and their engagement in the protected activity of formally complaining of said discrimination;

23

4. As and for Plaintiff's First Claim, grant Plaintiff the sum of $2,000,000.00, along with punitive and exemplary damages in the amount of $2,000,000.00;

5. As and for Plaintiff's Second Claim, grant Plaintiff the sum of $2,000,000.00;

6. As and for Plaintiff's Third Claim, grant Plaintiff the sum of $2,000,000.00 along with punitive and exemplary damages in the amount of $2,000,000.00;

7. As and for Plaintiff's Fourth Claim, grant Plaintiff the sum of $2,000,000.00 along with punitive and exemplary damages in the amount of $2,000,000.00;

8. As and for Plaintiff's Fifth Claim, grant Plaintiff the sum of $2,000,000.00 along with punitive and exemplary damages in the amount of $2,000,000.00;

9. As and for Plaintiff's Sixth Claim, grant Plaintiff the sum of $2,000,000.00 along with punitive and exemplary damages in the amount of $2,000,000.00;

10. As and for Plaintiff's Seventh Claim, grant Plaintiff the sum of $2,000,000.00 along with punitive and exemplary damages in the amount of $2,000,000.00;

11. Grant Plaintiff all costs for this action, including reasonable attorney's fees; and

24

12.   Grant Plaintiff such other and further relief as this Court deems just.


Dated:      Lake Success, New York
            October 12, 2011


                        Yours etc,
                        Cronin & Byczek, LLP


                        *Rocco G. Avallone* (signature)
                        ROCCO G. AVALLONE (RA8055)
                        Attorneys for Plaintiff
                        1983 Marcus Ave, Suite C-120
                        Lake Success, New York 11042
                        (516) 358-1700



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
2013 0302

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

July 11, 2011

Mr. Thomas Zane
c/o Linda M. Cronin, Esquire
Law Offices of Cronin & Byczek
Attorneys & Counselors at Law
1983 Marcus Ave., Ste. C-120
Lake Success, NY 11042

Re:  EEOC Charge Against New York City Sheriff's Office, et al.
     No. 520201000864

Dear Mr. Zane:

Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since the date
the Commission assumed jurisdiction over the charge, and no suit based
thereon has been filed by this Department, and because you through your
attorney have specifically requested this Notice, you are hereby notified
that you have the right to institute a civil action under Title VII of the
Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against
the above-named respondent.

If you choose to commence a civil action, such suit must be filed in
the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC
New York District Office, New York, NY.

This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Thomas E. Perez
Assistant Attorney General
Civil Rights Division

by  Karen L. Ferguson

Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: New York District Office, EEOC
    New York City Sheriff's Office, et al.